# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                          Plaintiff,          :          Case No. 3:17-cr-028
                                                         Also 3:19-cv-389

                                                         District Judge Thomas M. Rose
          -  vs  -                                       Magistrate Judge Michael R. Merz

KURON EVANS,

                          Defendant.          :

---

## REPORT AND RECOMMENDATIONS ON THE MERITS

---

This case under 28 U.S.C. § 2255 is before the Court for decision on the merits.  Defendant Evans filed his § 2255 Motion December 5, 2019[1] (ECF No. 187).  The Magistrate Judge recommended dismissal under Rule 4 of the Rules Governing § 2255 Motions (ECF No. 188), but withdrew that Report and allowed Evans to supplement his Motion (ECF No. 200).  After he did so (ECF No. 205), the Magistrate Judge ordered the United States to answer (ECF No. 206).  The Government complied with that Order (ECF No. 210) and Evans has now filed a Response to the Answer (ECF No. 214), rendering the case ripe for decision.

---

[1] Although the Motion was not received by the Clerk and docketed until December 11, 2019, Evans states he deposited it in the prison mail system December 5 and he is entitled to the earlier date as the date of filing.  *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002).  The Government has not claimed the filing was untimely.

**Litigation History**

Defendant Evans was named in the Second Superseding Indictment filed in this case on May 25, 2017, and included in Counts 1, 11, 12, and 15 (ECF No. 51). On August 22, 2018, he entered into a Plea Agreement with the United States in which he agreed to plead guilty to Count 11 which charged him with distribution of heroin in an unspecified amount, an offense carrying a maximum penalty of twenty years imprisonment (ECF No. 157). The parties agreed that the appropriate sentence would be sixty months plus three years supervised release. *Id.* at ¶ 6, PageID 474.

Among other things, the United States agreed to recommend that Evans "be allowed to serve his state term of imprisonment prior to the term of incarceration imposed in this case." *Id.* at ¶ 7, PageID 475. Section 7 concludes, "Defendant agrees and understands that these recommendations in Paragraph 7 do not bind the Court, and defendant cannot withdraw his plea if the Court declines to accept these recommendations contained in Paragraph 7." *Id.* Paragraph 12 of the Plea Agreement reads, "This is the complete agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties." *Id.* at PageID 476.

Following the required plea colloquy under Fed. R. Crim. P. 11, Judge Rose accepted the Plea Agreement and Evans' guilty plea (Minute Entry, ECF No. 159). On November 27, 2018, and after considering the Presentence Investigation Report from the Probation Department, Judge Rose imposed the agreed sentence and dismissed Counts 1, 12, and 15 (Minute Entry, ECF No. 167; Judgment, ECF No. 168). Evans made no claim at sentencing that he had not been sentenced

as agreed upon and he took no appeal; his time to do so expired December 11, 2018.  See Fed. R.

App. 4(b)(1)(A)(i).

# Analysis

Evans, who is proceeding *pro se,* pleads one ground for relief:

> **Ground One:**  Movant has been denied specific performance of
> his plea.

> **Supporting Facts:**  A specific promise and inducement to enter a
> plea of guilty herein was the promise that Movant would first be
> allowed to enter state custody and discharge his sentence obligation.
> In the event he was not so afforded specific performance, and as a
> result Movant is denied program participation in FBOP including
> Community Confinement.

(Motion to Vacate, ECF No. 187, PageID 666.)

Evans has never moved to amend his Motion, but his basis for relief has shifted appreciably

since his first filing – from a promise that the state sentence would be served first to an allegedly

broken promise by the Government to recommend that result.

In withdrawing the Rule 4 Report, the Magistrate Judge noted the difference between what

Evans claims he had been promised and what the Plea Agreement actually says about service of

his state imprisonment time before serving his federal time (ECF No. 200).  In his Supplement,

Evans claims "the promise was for the United States to recommend such service of term in Ohio

before the BOP Term, and as memorialized in the sentence record, promised to make efforts to

facilitate this promise and ultimately goal.  (ECF No. 205, PageID 724).  His Supplement then

continues to describe at some length the negative results of his attempt to find out if the United

States had contacted the Bureau of Prisons as Evans alleges the United States Attorney promised in the Plea Agreement.

After the United States answered and denied making the promise alleged in the Supplement, Evans again changed his claim. He now says his "reasonable understanding" of the Plea Agreement was that the United States, after the change of plea hearing, "would indeed recommend **to the Court** that the State term of incarceration be served first." (Response/Traverse, ECF No. 214, PageID 794). He restates his "reasonable understanding" as being that "the Government would make the recommendation to the Court so the matter would be addressed and decided on the very recommendation at issue orally and in [open] court." *Id.* at PageID 794-95. Evans counters the Government's claim that it did make the promised recommendation in the Plea Agreement and in the Presentence Investigation Report by stating it was his understanding that the recommendation would be made orally. *Id.* at PageID 795.

Evans' claim since he initiated these § 2255 proceedings has been that he did not get what he was promised in the Plea Agreement. A habeas petitioner may not add claims to a case in a traverse. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Here, however, construing Evans' *pro se* pleadings liberally, the Magistrate Judge will treat Evans' statement of his claim in the Response as his operative statement of the claim.

"Plea agreements are contractual in nature" and are therefore interpreted and enforced in accordance with traditional contract law principles. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002); *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). Once a plea agreement has been interpreted, the burden of proving a breach lies with the party asserting the breach. *United*

*States v. Harris*, 2006 U.S. App. LEXIS 23456 (6th Cir. Sept. 15, 2006), citing *United States v. Smith*, 429 F.3d 620, 630 (6th Cir. 2005).

Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements. *State v. Bethel*, 110 Ohio St. 3d 416 (2006). The Sixth Circuit interprets plea agreements according to traditional contract law principles and construes ambiguities against the government. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). A court "must give effect to the intent of the parties as expressed by the plain language of the plea agreement." *United States v. Beals*, 698 F. 3d 248, 256 (6th Cir. 2012). Here the intent of the parties is embodied in plain language – the Government agrees to make a recommendation. There is no ambiguity here to be construed against the Government.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement for consideration, such a promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

The Plea Agreement provides at ¶ 7(b) "The USAO [United States Attorney's Office] agrees to make the following recommendations to the Court . . . (2) That defendant be allowed to serve his state term of imprisonment prior to the term of incarceration imposed in this case." (ECF No. 157, PageID 174-75). ¶ 7 also provides: "Defendant agrees and understands that these recommendations in Paragraph 7 do not bind the Court, and defendant cannot withdraw his plea if the Court declines to accept these recommendations contained in Paragraph 7." *Id.* at PageID 175.

Defendant now reads this language as a promise, made at the time the Plea Agreement was entered into, to make a recommendation in the future. However, this way of phrasing the Government's agreement to make recommendations reads in the future tense because the language of plea agreements in this Court is typically hammered out and the document even signed before

the parties come to Court for the plea colloquy. Plea agreements are not binding on the Court until they are accepted by the Court after the plea colloquy. In the context of plea agreements in this Court, an agreement by the Government in a plea agreement to make a recommendation becomes the embodiment of that recommendation once the plea agreement is accepted.

Defendant also now reads this language as a promise to make the recommendation orally in open court. But the Plea Agreement does not say that. It does not say the recommendation will be made again or that it will be oral or that it will be made in open court.

As Respondent points out, the Plea Agreement has what is known in contract law as an "integration clause" which provides "12. Entire Agreement: This is the complete agreement between the parties. It supersedes all other promises, representations, understandings, and agreements between the parties." (ECF No. 157, PageID 476). The very purpose of such a clause, which is common in a very broad array of contracts, is to prevent the sort of controversy Evans now raises: a claim that there is some other promise outside the plea agreement or that some clause in its was intended to mean something besides what it says.

By signing the Plea Agreement in the form in which it was accepted by the Court, the United States Attorney fulfilled the promise made at ¶ 7(b)(2) – he made the recommendation he promised to make that Evans be allowed to serve his state sentence first.

But the Government's fulfillment of its promise did not stop there. That recommendation was also reported to the Court in the Presentence Investigation Report and the Government made no objection to acceptance of that Report (PSR ¶ 11). In fact at sentencing the Government recommended the Court accept the agreed sentence of sixty months which was almost eight years below the minimum sentence calculated under the Sentencing Guidelines. (Sentencing Tr., ECF No. 174, PageID 536.)

6

Ultimately Judge Rose did not accept the recommendation to order the State sentence be served first. The PSR noted that the Sentencing Guidelines called for a sentence in this case to be served consecutively to any sanction for violating the state conviction release conditions. When defense counsel raised the question at sentencing, he also advised the Court that he had told Evans the State was waiting to see what happened in this case and he believed the State's action could take precedence over the federal sentence. But the Plea Agreement makes it quite explicit that Judge Rose was not bound to accept those recommendations and the Judge repeated that warning to Evans several times during the plea colloquy, as quoted in Respondent's Answer.

In its Response, the United States argued this claim was procedurally defaulted because it was not raised on direct appeal. If Evans had continued to formulate his claim as he made it in the Supplement – that the Government had promised to contact the BOP to recommend the State sentence be served first – the Magistrate Judge would have been prepared to find that claim was not procedurally defaulted because Evans could not have discovered the breach in time to file an appeal within the fourteen days allowed. With the shift of the claim to the way it is made in the Traverse, the Magistrate Judge finds the procedural default defense has merit. If the promise was, as Evans now says he reasonably understood it to be -- that the United States attorney would make the recommendation orally and in open court before sentence was pronounced -- then Evans knew as soon as Judge Rose pronounced sentence that the Government had not made the recommendation "orally and in open court" and thus in ample time to appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual

> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  The procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions.  *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).  Because Evans knew of the Government's failure to make the recommendation as he now says he understood it was to be made was known to Evans at a time when  he could have appealed, he has procedurally defaulted the claim by failing to appeal.

**Conclusion**

Defendant's claim of breach of his Plea Agreement, made in this § 2255 Motion, is both procedurally defaulted and without merit.  The Motion to Vacate should therefore be dismissed with prejudice and judgment entered to that effect under Fed.R.Civ.P. 58.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

July 20, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.